PER CURIAM.
Defendant was charged by bill of information on October 9, 1973, with simple escape, in violation of La.R.S. 14:110. After trial by jury, December 12, 1979, he was found guilty of attempt simple escape. La. R.S. 14:27; 14:110. On December 18, 1979, the trial court sentenced him to two years’ imprisonment at hard labor. Defendant has now appealed his conviction and sentence to this Court urging three assignments of error. We find merit in assignment of error number one, which challenges the trial court’s denial of a motion to quash on grounds that the state had not brought defendant to trial within two years of the institution of prosecution, as required by La.C.Cr.P. Art. 578. On the record before us, we find that the state has made no effort to justify its failure to pursue defendant’s return from incarceration in Texas within the applicable time limitation, despite full knowledge of his whereabouts. Accordingly, we remand this case to the trial court for reconsideration of the question in light of our recent opinion in State v. Devito, La., No. 67,261, (July 6,1980).
In July, 1972, defendant was sentenced to four and a half years’ imprisonment at hard labor on his plea to a charge of attempt simple burglary. La.R.S. 14:27; 14:62. On July 24, 1973, he was transferred from the state penitentiary at Angola to the work release program at Camp Beauregard in Pineville, Louisiana. On September 26, 1973, defendant travelled to the Huey P. Long Hospital in Baton Rouge for a hernia operation. While at the hospital, he managed to escape from custody and made his way to Texas, where he was arrested on a charge of grand larceny in October, 1973. That charge eventually led to his conviction and sentence to six years’ imprisonment in Texas. In the meantime, a charge of simple escape was filed by the District Attorneys Office in Rapides Parish on October 9, 1973.
On October 26, 1973, the Rapides Parish Sheriff’s Office wrote to the authorities in Dallas, Texas to confirm the fact of defend-
*382 ant’s arrest. That letter advised the officials in Texas of the pending simple escape charge in Louisiana and added that “[i]f you decide to release him to us first, it will be greatly appreciated.” “If he will waive extradition,” the letter closed, “we will come immediately to pick him up.” The record does not disclose whether the Texas authorities ever responded to the letter. Nor does it indicate whether the state then took any other steps to secure defendant’s return from Texas at any time during his incarceration in that state. The Texas authorities eventually released defendant to the custody of Louisiana officials in June, 1979. The trial on the escape charge in Rapides Parish followed shortly thereafter.
La.C.Cr.P. Art. 578 states that “. no trial shall be commenced . . . [i]n . felony cases [other than capital cases] after two years from the date of institution of the prosecution . . .”. La.C.Cr.P. Art. 579 provides, however, that the time limitations established by Art. 578 “. . . shall be interrupted if . [t]he defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state . . .”. Art. 579 further provides that the time limitations of Art. 578 “shall commence to run anew from the date the cause of interruption ho longer exists.”
The state instituted prosecution of the escape charge on October 9, 1973, at a time when defendant was a fugitive and his whereabouts were, presumably, unknown. By October 26, 1973 at the latest, however, the authorities in Rapides Parish had learned about defendant’s arrest in Texas and his custody by officials there. The defense thus argued below that, even given the interruption of the time limitations in Art. 578 caused by defendant’s flight, the two-year period began running anew no later than October 26, 1973. In support of this position, defendant took the stand at the hearing on the motion to quash and testified that he had written two letters from Texas to the authorities in Rapides Parish in April, 1975. He sent the first to the clerk of court, and the second to the sheriff’s office. Both letters, defendant claimed, asked about the existence of any charges arising out of his flight to Texas, the letter to the clerk also expressing the desire for a “fast and fair trial” in that regard. In light of this testimony, the defense argued that defendant had affirmatively sought to bring matters to a head on the escape charge. Trial on that charge, according to the defense, therefore prescribed in October of 1975, two years after the authorities first learned of defendant’s whereabouts.
Defendant’s testimony, however, was rebutted at the hearing by witnesses from the clerk’s office and sheriff’s department. In view of the conflict, the trial court was “. . . just not satisfied from the copies of the letters that were filed in evidence, that these were actually sent at the time, because none of the addresses received them.” Relying on our decision in State v. Dupree, 256 La. 146, 235 So.2d 408 (1970), the trial court thus denied the motion to quash. In Dupree, this Court held that the interruption of limitations under Art. 579 created by defendant’s flight to, and subsequent incarceration in, another state did not end simply with the state’s knowledge of his whereabouts. “The interruption continued,” we noted, 235 So.2d at 411, “because herein the State of Louisiana exercised its discretion not to pursue the prosecution, and defendant himself made no attempt to bring about a termination of the interruption.”
The trial court’s reliance on Dupree was misplaced. In State v. Devito, supra, we have now made clear that whatever the affirmative burdens placed on defendant in this regard, Art. 578 “mandat[es] trial within two years after institution of [the] prosecution unless the state can show a valid and continuing interruption under Art. 579.” In Devito, the state learned of defendant’s arrest by the authorities in New Jersey one day prior to filing an information charging him with robbery in February 1977. Despite initial efforts at extradition, it did not secure defendant’s return from New Jersey *383 until November, 1979, more than two years after the institution of the prosecution. We found that the state had not, in fact, diligently pursued defendant’s return to Louisiana and held that the delay barred defendant’s trial. We also noted that “[t]o the extent that Dupree would permit the state to delay commencement of trial without bearing the burden of showing valid reasons therefor under the exceptions set out in Art. 579, that case is overruled.”
At the time of the trial court’s ruling on the motion to quash, Dupree was still good law. Therefore, we now remand this case to the trial court for consideration of the state’s position under Devito. The state is to be given opportunity at a new hearing to explain what efforts it made to secure defendant’s return from Texas in addition to the letter sent on October 26, 1973. In the event the state presents additional evidence on that question, and the trial court finds on the basis of this evidence that a good faith effort under Devito had been made, we reserve to defendant the right to appeal that adverse ruling. We also reserve to that appeal, if it is taken, consideration of defendant’s other assignments of error.
CASE REMANDED.